IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ricardo V. Dodson,                      :

    Plaintiff,                       :

v.                                      :   Case No. 2:03-cv-0944

Reginald A. Wilkinson, et al.,          :   JUDGE MARBLEY

    Defendants.                      :

OPINION AND ORDER

On June 9, 2006, the Magistrate Judge issued a Report recommending that this Court grant defendant Dr. Bruce Martin's motion for summary judgment. On June 21, 2006, plaintiff Ricardo Dodson filed an objection to the Magistrate's Report and Recommendation arguing that, under the Sixth Circuit Court of Appeals holding in <u>Napier v. Madison County</u>, 238 F.3d 739 (6th Cir. 2001), the Magistrate erred in recommending that Dr. Martin's motion for summary judgment be granted. For the following reasons, Mr. Dodson's objections will be overruled and the Magistrate's Report and Recommendation will be adopted.

I.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962); accord, County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir. 1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict . Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 250.

> The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously

2

invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party."  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted); accord, Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir. 1984), cert. denied, 469 U.S. 1062 (1985).  Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Watkins v. Northwestern Ohio Tractor Pullers Association, Inc., 630 F.2d 1155, 1158 (6th Cir. 1980).  Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes, 398 U.S. at 157-60; Smith v. Hudson, 600 F.2d 60, 65 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  Anderson, 477 U.S. at 251.  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made

3

>and supported as provided in this rule, an
>adverse party may not rest upon the mere
>allegations or denials of his pleading, but
>his response, by affidavits or as otherwise
>provided in this rule, must set forth
>specific facts showing that there is a
>genuine issue for trial. If he does not so
>respond, summary judgment, if appropriate,
>shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 259 (1968) (footnote omitted).

II.

In Mr. Dodson's objections, Mr. Dodson argues that the Magistrate Judge erred by not reviewing Mr. Dodson's previously submitted medical records to prove that Dr. Martin acted with deliberate indifference in violation of the Eighth Amendment.[1] Specifically, Mr. Dodson contends that his medical records demonstrate that Dr. Martin delayed testing and treatment of Mr. Dodson's disease, which caused Mr. Dodson pain and suffering. Mr. Dodson states (reproduced verbatim):

>The Honorable Magistrate Judge Kemp is
>recommending that Summary Judgment be grant
>for defendant based on the arugment that
>since the defendant created a protocol to
>ensure that all new incoming inmates be
>tested for Hepatitis C., he did not act with
>deliberate indifference. However, the fact
>that defendant Martin created a policy for
>testing is not the issues/claims raised by
>plaintiff in this action. In fact, plaintiff
>claims that the policy created by defendant
>Martin intentionally delayed testing and

---

[1] In all, Mr. Dodson raises five objections. A review of all the objections, however, indicate that Mr. Dodson is essentially raising the same argument in each objection.

4

> treatment, thereby causing injury.

(Plaintiff Dodson's Written Objection to the Magistrate's Report and Recommendation at p. 5.)

In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the United States Supreme Court outlined a two-part test in determining whether an official acted with "deliberate indifference" in violation of the Constitution's proscription against cruel and unusual punishment. First, under the "objective component," an inmate must prove that the alleged deprivation is "sufficiently serious." <u>Id.</u> at 834. Second, under the "subjective component," an inmate must demonstrate that the prison official had a "sufficiently culpable state of mind." <u>Id.</u> However, when an inmate alleges delay in medical treatment as the basis for the constitutional violation, in order to satisfy the "objective component," the inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." <u>Napier</u>, 238 F.3d at 742 (citing <u>Hill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1188 (11th Cir. 1994)).

In <u>Napier</u>, the plaintiff, Jeffrey Napier, was arrested on motor vehicle violations and was incarcerated at the Madison County Jail. At all times during his confinement, Mr. Napier suffered from complete kidney failure and required dialysis. He was scheduled to receive dialysis treatment three times a week, which he indicated on the booking form when he was brought to jail. Mr. Napier was scheduled for dialysis while he was confined but informed the jailer that missing the appointment was "no big deal" because he has "missed them before." During the night of his incarceration, Mr. Napier allegedly informed jail personnel that he was sick and needed dialysis, a request that the jailers refused.

On the morning of December 5, 1997, Mr. Napier received a furlough that allowed his relatives to transport him to his

5

dialysis treatment and return him to the jail. No relative picked him up and Mr. Napier was subsequently released from jail after twenty-nine hours of incarceration. Medical records revealed that Mr. Napier did not appear for his scheduled dialysis visit prior to incarceration, did not receive scheduled dialysis on the day of his release and did not receive scheduled dialysis that following Monday. The medical records also revealed that Mr. Napier failed to appear at forty-one scheduled dialysis treatments in 1997.

Mr. Napier filed suit alleging violations of his Eighth Amendment constitutional rights against the jail and the jailers. The district court granted summary judgment to all defendants, and the Sixth Circuit Court of Appeals affirmed, stating, in relevant part:

> As the district court correctly noted, three Circuits examine the seriousness of a deprivation by examining the effect of the delay in treatment.
>
> ***
>
> This approach seems practical and logical and will often afford the court with the best available evidence on the question whether the alleged deprivation is sufficiently serious and whether the inmate is incarcerated under conditions posing a substantial risk of serious harm. Accordingly, we follow the approach taken by the First, Third, and Eleventh Circuits. Specifically, we adopt the holding in *Hill* that [a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.
>
> Napier argues that the district court erred in examining the effect of the delay in treatment because he was denied a scheduled

6

>       treatment instead of suffering a delay.  This
>       argument attempts to draw a distinction that
>       is unsupported by the record.  Napier did
>       miss a scheduled treatment because he was
>       incarcerated, but his treating physician
>       testified that he could have received his
>       dialysis treatment when he was released from
>       jail if he had gone to the hospital connected
>       to the clinic where the treatment was
>       scheduled.  The fact that Napier missed his
>       appointment does not mean that he could not
>       have received dialysis a few hours after his
>       scheduled appointment.  It is telling that
>       Napier did not go to the hospital seeking
>       dialysis after he was released.  Equally
>       pertinent is the fact that Napier skipped his
>       scheduled dialysis on the Monday following
>       his Friday release from the MCDC.
>
>       Napier has not offered any medical evidence
>       to show that he suffered a detrimental effect
>       from being kept from his scheduled dialysis.
>       His treating physician testified that missing
>       the treatment did not affect his mortality or
>       morbidity.  His medical expert testified that
>       Napier should attend all of his treatments,
>       but did not pinpoint any medical detriment
>       suffered by missing the Friday dialysis.

Napier, 238 F.3d at 742-43 (internal citations and quotations omitted).

In the instant case, Mr. Dodson claims Dr. Martin's Hepatitis C testing procedures delayed the testing and treatment of Mr. Dodson for Hepatitis C, which caused Mr. Dodson injury. As evidence of this, Mr. Dodson submitted into the record medical records that date back as early as 1992.  According to the evidence, however, Dr. Martin became the Medical Director of the Bureau of Medical Services for the Ohio Department of Rehabilitation and Correction in 1999.

One of Dr. Martin's "first assignments was to develop a protocol for the identification and treatment of inmates with Hepatitis C."  (Aff. of Dr. Martin at ¶7.)  Further, Dr. Martin's

7

affidavit states:

> In preparation for developing the protocol, I researched the disease.
>
> I consulted with other corrections departments around the country.
>
> I consulted with GE specialists at Ohio State University Hospital.
>
> The purpose was to establish a protocol that would meet the needs of inmates, to identify and diagnose those with Hepatitis C.
>
> \*\*\*
>
> My goal was to provide appropriate medical care for all inmates, including those identified with Hepatitis C and those who should be tested for Hepatitis C.
>
> I considered but rejected universal testing of all inmates already in the system.
>
> I chose instead to establish a policy that screened for established risk factors.
>
> After I completed my research, I developed a protocol which was released on November 8, 2001, that provides guidelines for the evaluation and management of inmates with chronic Hepatitis C.
>
> \*\*\*
>
> Screening was done for all incoming inmates and for current inmates when an established risk factor was identified.
>
> A protocol is an official clinical statement that defines a medical procedure or course of action.
>
> \*\*\*
>
> I purposefully included in both versions of the protocol a clause to allow medical

> personnel of the individual institutions to test any inmates where they believed it was medically indicated.
>
> \*\*\*
>
> The diagnosis and management of Hepatitis C is a constantly evolving issue. The medical staff of ODRC is committed to remaining current on all developments in order to provide to inmates with appropriate medical care.

(Id. at ¶¶8-12, 14-17, 22-23.) Based on Dr. Martin's actions when he became medical director, this Court cannot conclude that Dr. Martin acted with deliberate indifference in violation of Mr. Dodson's Eighth Amendment rights. While Mr. Dodson did place into the record his medical history starting in 1992, a review of the record reveals that Mr. Dodson failed to prove a "detrimental effect" from not being tested and treated for Hepatitis C from 1999, when Dr. Martin became medical director, to 2001, when inmates were systematically tested for the disease. Moreover, according to Dr. Martin, Mr. Dodson has Stage 1 Hepatitis C, which indicates that Mr. Dodson "is not likely to progress to a need for treatment in less than 10 to 20 years" because he is in the earliest stages of the disease. (Id. at ¶¶21, 26.) Without proving "detrimental effect" as a result of the alleged delay in testing and treatment for Hepatitis C, Mr. Dodson cannot successfully make an Eighth Amendment claim against Dr. Martin because Mr. Dodson failed to prove the "objective component" outlined in Farmer and Napier.

### III.

For the foregoing reasons, Mr. Dodson's Written Objection to the Magistrate's Report and Recommendation (doc. #82) is

9

OVERRULED, and the Magistrate Judge's Report and Recommendation is adopted in its entirety.  The case is DISMISSED WITH PREJUDICE.

                                       s/Algenon L. Marbley
                                      Algenon L. Marbley
                                      United States District Judge